

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

April 14, 1998

Mr. Barry R. McBee
Chair, Texas Natural Resource
  Conservation Commission
P.O. Box 13087
Austin, Texas 78711-3087

Opinion No. DM-474

Re: Whether Water Code section 5.123, *as enacted by* Act of May 24, 1997, 75th Leg., R.S., ch. 1203, § 1, violates the suspension of laws and separation of powers provisions of the Texas Constitution  (RQ-975)

Dear Mr. McBee:

You ask whether Water Code section 5.123,[1] a recently enacted statute[2] authorizing the Texas Natural Resource Conservation Commission ("TNRCC" or the "commission") to grant exemptions to statutes and commission rules regarding pollution control or abatement, violates the suspension of laws[3] and separation of powers[4] provisions of the Texas Constitution. For the following reasons, we conclude that section 5.123 does not run afoul of these provisions.

Chapter 5 of the Water Code establishes the TNRCC and sets forth its general powers and duties. Section 5.123 provides in pertinent as follows:

> (a) The commission by order may exempt an applicant from a requirement of a statute or commission rule regarding the control or abatement of pollution if the applicant proposes to control or abate pollution by an alternative method or by applying an alternative standard that is:
>
> (1) at least as protective of the environment and the public health as the method or standard prescribed by the statute or commission rule that would otherwise apply; and
>
> (2) not inconsistent with federal law.

---

[1] *As enacted by* Act of May 24, 1997, 75th Leg., R.S., ch. 1203, § 1, 1997 Tex. Sess. Law Serv. 4621, 4621.

[2] *See id.*

[3] Tex. Const. art. I, § 28.

[4] Tex. Const. art. II, § 1.

(b) The commission by rule shall specify the procedure for obtaining an exemption under this section. The rules must provide for public notice and for public participation in a proceeding involving an application for an exemption under this section.

(c) The commission's order must provide a specific description of the alternative method or standard and condition the exemption on compliance with the method or standard as the order prescribes.

. . . .

(e) A violation of an order issued under this section is punishable as if it were a violation of the statute or rule from which the order grants an exemption.

We begin with your question about the prohibition against suspension of laws. Article I, section 28 of the Texas Constitution provides that "[n]o power of suspending laws in this State shall be exercised except by the Legislature." Section 28 prohibits the legislature from delegating the power to suspend laws.[5] Courts have held that section 28 does not preclude the legislature from authorizing an administrative agency to grant exceptions to statutory requirements, however, provided that the agency's discretion is limited — or, in other words, that the delegation of authority is valid under article II, section 1 of the Texas Constitution. Thus, for example, in *Sproles v. Binford* the United States Supreme Court considered a section 28 challenge to a Texas statute that generally prohibited the operation of overweight and oversize vehicles but authorized the former Texas Highway Department to grant carriers time-limited permits to transport overweight or oversize commodities "as cannot be reasonably be dismantled" under certain conditions. *Sproles v. Binford*, 286 U.S. 374, 380 n.1, 397 (1932). The court concluded that "the authority given to the department is not to suspend the law, but is of a fact-finding and administrative nature." *Id.* at 397 (citing *Trimmier v. Carlton*, 296 S.W. 1070 (Tex. 1927)). The court went on to conclude that the statute was a constitutional delegation of legislative power. *Id.* This reasoning has been adopted by at least two Texas courts faced with section 28 challenges to statutes authorizing administrative agencies to grant exceptions to statutory requirements. *See Williams v. State*, 176 S.W.2d 177 (Tex. Crim. App. 1943) (upholding statute authorizing commissioner of agriculture to promulgate rules making exceptions to boll weevil eradication statute prohibiting cotton farming in regulated zones); *State Bd. of Ins. v. Sam Houston Life Ins. Co.*, 344 S.W.2d 709 (Tex. Civ. App.--Austin 1961, no writ) (upholding statute authorizing former Board of Insurance Commissioners to make exceptions to statutory filing requirements).

Section 5.123 authorizes the TNRCC to grant exemptions to statutory and regulatory pollution control or abatement requirements "if the applicant proposes to control or abate pollution by an alternative method or by applying an alternative standard that is at least as protective of the

---

[5]*McDonald v. Denton*, 132 S.W. 823, 825 (Tex. Civ. App. 1910, no writ).

environment and the public health as the method or standard prescribed by the statute or commission rule that would otherwise apply." An order under section 5.123 does not authorize its holder to violate a pollution control or abatement statute. Rather, it authorizes the holder to comply with the statute by another means that conforms with a legislatively prescribed standard. The power delegated to the TNRCC is not the power to suspend statutes but rather to determine whether alternative methods of compliance satisfy the legislatively prescribed standard. We see no reason why the legislature cannot delegate this authority to an administrative agency, provided that the prescribed standard is sufficiently clear. *See* discussion of Tex. Const. art. II, § 1 *infra* pp. 4-5.

A brief submitted to this office suggests that *Williams v. State*, cited above, must be distinguished because in that case the Commissioner of Agriculture was authorized to make exceptions by rule whereas in this case the TNRCC is authorized to grant exemption orders on a case-by-case basis. We disagree. First, we are not persuaded that there is a distinction for purposes of section 28 between a statute authorizing an agency to make general exceptions to a statutory requirement by rule and one authorizing an agency to make specific exceptions to a statutory requirement by order. Section 5.123 mandates that TNRCC procedures for obtaining an exemption must provide for public notice and for public participation in a proceeding involving an application for an exemption,[6] a process akin to rulemaking procedures.[7] Furthermore, each order must comport with the same basic standard that the approved alternative method or standard be "at least as protective of the environment and the public health."[8] While we appreciate that it may be a greater challenge for the public to monitor and participate in an untold number of exemption proceedings than to monitor and participate in a few rulemaking proceedings, we do not view this as a tenable objection under section 28.

Moreover, the section 28 cases cited above do not suggest that the manner in which an agency is authorized to make exceptions to statutory requirements is significant. The *Williams v. State* opinion does not make this distinction. Moreover, in *Sproles v. Binford* the United States Supreme Court clearly condoned legislation authorizing the state highway department to make exceptions to general law by permits granted on a case-by-case basis. *See also Sam Houston Life Ins. Co.*, 344 S.W.2d 709 (condoning statute authorizing Board of Insurance Commissioners to make by order case-by-case exceptions to statutory filing requirements).

Section 5.123 is unique in its scope. Unlike the statutes at issue in the cases discussed above, it does not authorize the TNRCC to make exemptions to just one statute. Rather, it authorizes the commission to make exemptions to a broad class of statutes. We do not believe this difference is significant for purposes of section 28, however. Clearly, the legislature would not run afoul of the suspension of laws provision if it amended a particular pollution control or abatement statute to

---

[6]Water Code § 5.123(b).

[7]*See* Gov't Code ch. 2001, subchap. B (Administrative Procedure Act provisions governing rulemaking).

[8]*See also* discussion of local and special laws and equal protection guarantees *infra* pp. 5-6.

authorize the TNRCC to grant applications permitting compliance by alternative means that conform with a particular standard. The potential magnitude of statutes and commission rules affected by section 5.123 does not transform the statute into a suspension of laws. While the broad scope of section 5.123 may have unique policy implications, it is not our role to evaluate the wisdom of the legislature's policy choices. Based on the cases discussed above, we conclude that section 5.123 does not authorize the TNRCC to suspend laws and thus does not violate article I, section 28.

Next, we address whether section 5.123 is a valid delegation of legislative authority. Article II, section 1, the separation of powers provision, requires that any delegation of legislative authority to an administrative agency be "'reasonably clear and hence acceptable as a standard of measurement.'" *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 467 (Tex. 1997). As the Texas Supreme Court recently stated,

> The Texas Legislature may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes "reasonable standards to guide the entity to which the powers are delegated." *Railroad Comm'n v. Lone State Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992) (*quoting State v. Texas Mun. Power Agency*, 565 S.W.2d 258, 273 (Tex. Civ. App.--Houston [1st Dist.] 1978, writ dism'd)). "Requiring the legislature to include every detail and anticipate unforeseen circumstances would . . . defeat the purpose of delegating legislative authority." *Id*.

*Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). Texas courts have generally upheld delegations of legislative authority, *Lewellen*, 952 S.W.2d at 467-68, except in cases where the delegation is so vague that it provides no legislative standards, *id*. at 468-69.

More particularly in the area of environmental and public health regulation, courts have concluded that broad standards provide sufficient guidance for administrative agencies to properly exercise delegated legislative authority. *See, e.g., Railroad Comm'n of Texas v. Lone Star Gas Co.*, 844 S.W.2d 679 (Tex. 1992) (approving standards delegating authority to Railroad Commission to prevent waste and promote conservation); *Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 438 (Tex. 1946) (upholding legislative delegation of authority to Railroad Commission to conserve oil and gas); *Med-Safe, Inc. v. State*, 752 S.W.2d 638, 640 (Tex. Civ. App.--Houston [1st Dist.] 1988, no writ) (upholding delegation of authority to Department of Health to license solid waste disposal sites to "safeguard the health, welfare and physical property of the people" and to "protect the environment"); *Beall Medical Surgical Clinic & Hosp., Inc. v. Texas State Bd. of Health*, 364 S.W.2d 755, 756-57 (Tex. Civ. App.--Dallas 1963, no writ) (upholding delegation of legislative authority to state board of health to license hospitals to "promote the public health and welfare by providing for the development, establishment, and enforcement of certain standards in the construction, maintenance, and operation of hospitals"); *Clark v. Brisoe Irrigation Co.*, 200 S.W.2d 674, 682-85 (Tex. Civ. App.--Austin 1947, writ dism'd) (upholding delegation of legislative authority to board of water engineers to determine whether permit application "detrimental to the public welfare").

Section 5.123 authorizes the TNRCC to grant exemptions to pollution abatement statutes and rules to applicants who propose to abate pollution by alternative methods provided that the alternative method is "at least as protective of the environment and the public health as the method or standard prescribed by the statute or commission rule that would otherwise apply." This delegation of authority articulates a broad standard comparable to the broad standards approved in the authorities cited above. While there may be some debate whether a particular alternative method satisfies the requirement that it be "at least as protective of the environment and the public health as the method or standard prescribed by the statute or commission rule that would otherwise apply," we believe a court would conclude that this language satisfies the dictates of article II, section 1.

Assuming section 5.123 does not authorize the TNRCC to suspend the law and is a permissible delegation of legislative authority, you also ask if "the exemption [may] be granted on a case-by-case basis, as contemplated by [section 5.123], or would it have to be a 'general' suspension?" We agree that section 5.123 contemplates that exemptions will be made on a case-by-case basis, but are not sure of the nature of your concern. Following your question, you cite *McDonald v. Denton*, 132 S.W. 823 (Tex. Civ. App. 1910), a case involving a City of Houston attempt to permit prostitution in a limited area, which explores the legislature's authority to suspend laws:

> It is the general rule that the Legislature, although given the power of suspending the operation of the general laws of the state, must make the suspension general, and cannot suspend them for individual cases or for particular localities. . . . . The Legislature of Texas itself could not have suspended such laws in a part or the whole of the city of Houston, and, of course, it cannot empower the municipal government to do so.

*Id.* at 824-25. In addition to articulating the principle that only the legislature may suspend the law, *McDonald* also recognizes the limitation on legislative power embodied in article III, section 56 of the Texas Constitution — the prohibition against legislative enactment of local and special laws. Given that you have already asked whether section 5.123 suspends the law, we assume you intend to ask whether section 5.123 is a local or special law contrary to article III, section 56.

The Texas Supreme Court recently explained the meaning of the terms "local law" and "special law" as follows:

> While the terms "local law" and "special law" have at times been used interchangeably, a local law is one limited to a specific geographic region of the State, while a special law is limited to a particular class of persons distinguished by some characteristic other than geography. *See* 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 273-277 (1977).

> The purpose of Section 56 is to "prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible." [*Miller v. El Paso County*, 150 S.W.2d 1000, 1001 (Tex. 1941).] In particular, it prevents lawmakers from engaging in the "reprehensible" practice of trading votes for the advancement of personal rather than public interests. *Id.*

*Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996).[9] Section 5.123 does not limit eligibility for pollution control or abatement exemptions to a specific geographic region or to a particular person or class of persons. On its face, section 5.123 is not a local or special law. We note, however, that the TNRCC, when adopting procedures for obtaining exemptions, granting exemptions, and monitoring compliance with exemption orders, must apply and enforce the law equitably. While the TNRCC is not the legislature and thus is not directly subject to article III, section 56, it must apply and enforce section 5.123 consistent with state and federal equal protection guarantees.[10]

---

[9]While the legislature is authorized to make classifications for legislative purposes,

> "the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation." *Miller*, 150 S.W.2d at 1001-02. "The primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class." *Rodriguez v. Gonzales*, 148 Tex. 537, 227 S.W.2d 791, 793 (1950).

*Monaghan*, 931 S.W.2d at 945. Thus, "the ultimate question under Article III, Section 56 is whether there is a *reasonable basis* for the Legislature's classification. . . . The significance of the subject matter and the number of persons affected by the legislation are merely factors, albeit important ones, in determining reasonableness." *Id.* at 947 (citations omitted).

[10]The requisites of article III, section 56 and equal protection guarantees are quite similar. *See id.*

## S U M M A R Y

Water Code section 5.123, *as enacted by* Act of May 24, 1997, 75th Leg., R.S., ch. 1203, § 1, does not violate article I, section 28 or article II, section 1 of the Texas Constitution.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General